[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14446

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 4, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-20059-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEISY AVILES,

Defendant-Appellant.

_____

No. 05-14447

_____

D. C. Docket No. 04-20059-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIO PINA,

                                        Defendant-Appellant.

                    _____

                    No. 05-14825
                    _____

                    D. C. Docket No. 04-20059-CR-AJ

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee
                                        Cross-Appellant,

                    versus

DALIA FERNANDEZ,

                                        Defendant-Appellant,

JOSE A. GARRIDO,
EDGAR ZAMORA,

                                        Defendants-Appellants
                                        Cross-Appellees.

                    _____

                    Appeals from the United States District Court
                     for the Southern District of Florida
                    _____

                    **(March 4, 2008)**

Before ANDERSON and BARKETT, Circuit Judges and TRAGER,[*] District Judge.

BARKETT, Circuit Judge:

This consolidated appeal involves a complex healthcare fraud scheme based in Miami involving both Medicare and private insurance companies. Fifteen of the indicted defendants pled guilty, and five were found guilty after a nine-week jury trial. The five defendants who proceeded to trial now appeal their convictions, and three of the defendants appeal from their sentences as well. We have considered the record, the briefs of the parties, and the oral arguments of counsel and find no reversible error on the issues raised by the defendants.

The Government, however, cross-appeals on the ground that the district court erred in applying the 2000 U.S. Sentencing Guidelines Manual, instead of the 2004 Guidelines Manual, in sentencing Dr. Jose A. Garrido and Dr. Edgar Zamora.[1] For the reasons discussed below, we vacate their sentences and remand their cases for resentencing.[2]

---

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

[1] Garrido worked at Miami Health Medical Center, the center of the healthcare fraud conspiracy, from June 1999–February 2000. Zamora began working at Miami Health following Garrido's departure, and was employed there until June 2000.

[2] We review the district court's factual findings at sentencing for clear error, and its legal interpretations of the Sentencing Guidelines de novo. United States v. Bailey, 123 F.3d 1381, 1403 (11th Cir. 1997).

A defendant is sentenced using the Guidelines Manual in effect at the time of sentencing, unless this would raise ex post facto concerns, in which case the defendant is sentenced using the Guidelines Manual in effect at the time the crime was committed. 18 U.S.C. § 3553(a)(4); U.S.S.G. § 1B1.11(b)(1). A defendant who is convicted of a conspiracy that began before, but continued after, a Guidelines amendment became effective may be sentenced based on the amendment without triggering any ex post facto concerns. See United States v. Diaz, 190 F.3d 1247, 1257 (11th Cir. 1999); United States v. Young, 39 F.3d 1561, 1570–71 (11th Cir. 1994); United States v. Nixon, 918 F.2d 895, 906–07 (11th Cir. 1990); United States v. Pippin, 903 F.2d 1478, 1481–82 (11th Cir. 1990). A defendant may escape the more severe amended penalty by withdrawing from the conspiracy prior to the effective date of the amendment. Pippin, 903 F.2d at 1481.[3]

Rather than conducting the relevant ex post facto analysis to determine which Guidelines to apply in sentencing Garrido and Zamora, the district court conducted a relevant-conduct analysis pursuant to U.S.S.G. § 1B1.3, and therefore never reached the issue of withdrawal. The district court did so based on United

---

[3] A conspirator demonstrates withdrawal by "proving that he (1) undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives, and (2) either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities." Pippin, 903 F.2d at 1481 (quotation and citation omitted). "Merely ending one's activity in a conspiracy may not constitute withdrawal." Id.

4

States v. Peeples, 23 F.3d 370, 374 (11th Cir. 1994), in which we held that the Sentencing Guidelines did not apply to two defendants whose participation in the conspiracy was not proven to include a time period after the effective date.

In Peeples, the defendants were involved in a drug smuggling conspiracy which spanned from 1979–1990. 23 F.3d at 371. In order to determine whether the Guidelines applied to the sentences of several individuals involved at various levels of the conspiracy at various times, we considered the scope of each individual's conduct with reference to the actual evidence of their continued involvement. Id. at 373–74. We did so, however, given the particular circumstances of that case, in which "the enterprise had sporadic and unpredictable episodes, with little foreseeability or opportunities to express intent to withdraw." Id. at 374. Thus, Peeples created an exception to the generally applicable ex post facto analysis by not requiring affirmative withdrawal in cases where the conspiracy is sporadic and there is little opportunity for the defendant to effectively withdraw. Unlike the conspiracy at issue in Peeples, however, the healthcare fraud conspiracy at Miami Health was constant and consistent, and its continuation was reasonably foreseeable. Neither Garrido nor Zamora argue that they did not withdraw from the conspiracy due to a lack of opportunity to do so. Thus, the narrow exception created by Peeples is inapplicable in this case.

5

Moreover, to the extent that language in <u>Peeples</u> is inconsistent with prior precedent such as <u>Nixon</u> and <u>Pippin</u> which articulate the appropriate ex post facto analysis, we are bound by our earlier holdings.  See <u>United States v. Hornaday</u>, 392 F.3d 1306, 1316 (11th Cir. 2005) (in case of intra-circuit conflict, Court must follow earlier decision).  In both <u>Nixon</u> and <u>Pippon</u>, we held that there was no ex post facto problem in applying the Guidelines in effect at the end of the conspiracy. In doing so, we looked to the specific conduct of the individual defendants in order to evaluate their claims that they had withdrawn prior to the effective date, which would preclude application of the Sentencing Guidelines.  See <u>Nixon</u>, 918 F.2d at 906–07 (appellant's demands to receive payment for prior drug courier trips were made in phone calls recorded after amended Guidelines' effective date); <u>Pippin</u>, 903 F.2d at 1481–82 (appellant continued to manage plant receiving funds procured through bid-rigging conspiracy after Guidelines' effective date). Contrary to Garrido and Zamora's suggestion, a relevant-conduct analysis was not undertaken in either case.[4]

In this case, as in most conspiracy cases, an ex post facto analysis should be conducted to determine which version of the Guidelines Manual applies, while the

---

[4] Garrido and Zamora also rely heavily upon <u>United States v. Hunter</u>, 323 F.3d 1314 (11th Cir. 2003).  In <u>Hunter</u>, however, the question was the loss amount that each defendant was liable for, not which version of the Guidelines was applicable.  <u>Id.</u> at 1316.  Thus, <u>Hunter</u> is inapplicable to this case.

relevant-conduct analysis determines the applicable Guidelines sentencing range within a particular manual. This principle is embodied in the Guidelines at U.S.S.G. § 1B1.11(b)(1). The application notes for § 1B1.11(b)(1) provide that

> the last date of the offense of conviction is the controlling date for ex post facto purposes. For example, if the offense of conviction (i.e., the conduct charged in the count of the indictment or information of which the defendant was convicted) was determined by the court to have been committed between October 15, 1991 and October 28, 1991, the date of October 28, 1991 is the controlling date for ex post facto purposes. This is true even if the defendant's conduct relevant to the determination of the guideline range under § 1B1.3 (Relevant Conduct) included an act that occurred on November 2, 1991 (after a revised Guideline Manual took effect).

U.S.S.G. § 1B1.11 cmt. n.2 (2004). The Guidelines clearly distinguish between the dates to be considered in determining ex post facto concerns and those dates related to relevant conduct.

On remand, the district court should use the appropriate Guidelines Manual under an ex post facto analysis. While we do not find that the actual sentence imposed by the district court was unreasonable, we leave the factual resolution of whether Garrido or Zamora did in fact withdraw from the conspiracy prior to the effective amendment date to be decided by the district court in the first instance.[5]

---

[5] Garrido argues that he did in fact withdraw from the conspiracy by terminating his employment and alerting Medicare in March 2000 that Miami Health was no longer authorized to bill under his issued provider number for medical services. The Government counters Garrido's argument that he withdrew in March 2000 with evidence that he provided false deposition testimony in March 2002 in a lawsuit Miami Health brought to collect personal injury protection insurance.

For the foregoing reasons, the sentences of Garrido and Zamora are **VACATED**

and the cases are **REMANDED** for **RESENTENCING** in a manner consistent

with this opinion.

---

Zamora argues that the law of withdrawal is inapplicable to this case and should not be allowed when the Government objected to a withdrawal instruction during trial. The Government concedes that it objected to a withdrawal instruction at trial but now argues that the objection is consistent with its current position, that neither Garrido nor Zamora introduced evidence sufficient to allow a reasonable jury to believe that either of them had withdrawn from the conspiracy. Zamora further argues that his sentence is reasonable, but since a reasonableness analysis is only conducted when the district court correctly calculates the Guidelines range, we do not reach it here. See United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005).